IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES McHUGH CONSTRUCTION CO., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-1099 |
| | * | |
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, | * | |
| Defendant. | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending in this insurance action are Plaintiff's and Defendant's cross-motions for summary judgment (ECF Nos. 6, 33). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendant's motion is granted and Plaintiff's motion is denied.

**I.   BACKGROUND**

The following facts are undisputed. James McHugh Construction Company ("Plaintiff") was selected to be the general contractor for the construction of a high-rise apartment building at 360 West Hubbard in Chicago, Illinois. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 2–3. 360 West Hubbard Joint Venture LLC, as the owner of the project, purchased an insurance policy from Defendant Travelers Property Casualty Company of America ("Defendant") covering Builders Risk and Inland Marine risks for 360 Hubbard. *See* Insurance Policy, ECF No. 31-2. The insurance policy contains a blanket named insured endorsement and names all contractors, including Plaintiff, as named insureds on the Policy. Pl.'s Resp. to Undisputed Facts,

ECF No. 36-1 at 19. The insurance policy also contains a broad form insuring agreement, which states that all loss to the project is covered except for those claims which are excluded:

> A.   **COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss . . . . Covered Causes of Loss means **RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE** except those causes of loss listed in the Exclusions . . . .

Insurance Policy, ECF No. 31-2 at 23 (emphasis in original).

In the fall of 2013, tenants began moving into the 360 West Hubbard building, and so the project owner requested Plaintiff to clean the exterior glass windows. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 5. Plaintiff engaged a subcontractor, Corporate Cleaning Services, Inc. ("CCS"), to clean the exterior glass. *Id.* The subcontract between Plaintiff and CCS describes CCS's scope of work as all "Exterior Window Washing." Specifically, the subcontract states:

> Without limiting the generality of [the term "Exterior Window Washing"], the following items are specifically included:
>
> 1.   Exterior washing of windows and surrounding frames.
> 2.   Protection of all existing finishes from damage during sitework.
> 3.   Rubbish removal to dumpsters provided by others.
> 4.   Daily cleanup, including load out of debris to dumpsters provided by the Contractor.
> 5.   Cooperation and coordination with all project personnel and other trades.
> 6.   Coordination with all agencies having jurisdiction over subcontractor work.
> 7.   All applicable taxes.

CCS-McHugh Subcontract, ECF No. 31-4. CCS was tasked with removing both dirt and "construction debris" that had settled on the window surfaces during the construction process. Construction debris includes dried mortar, concrete, cement, and paint. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 7. The construction debris on the exterior glass could not be removed using standard cleaning methods, *Id.* at 8, so CCS removed the debris using a metal scraper or

similar tool. *Id.* at 12. CCS failed to follow industry standards when removing debris from the glass designed to eliminate or reduce the risk of damaging glass. *see id.* at 12–17 ("McHugh believes that CCS failed to properly execute its work method because it was not in conformance with the Subcontract and all applicable industry standards."). As a result, the glass surfaces were scratched.

The scratched windows were rejected by the building's owner and thus Plaintiff was forced to incur the costs of repairing and replacing the scratched windows. Pl.'s Mot. Sum. Judgment, ECF No. 31 at 3. Plaintiff reported the loss and claim to Defendant. On July 15, 2014, Defendant denied the claim. The sole basis for Defendant's denial was Exclusion B(3)(d)(2) in the insurance policy for "Omission or faulty, inadequate or defective: Materials, workmanship or maintenance." Def.'s Rejection Letter, ECF No. 31-3. The insurance policy's exclusion clause states, in pertinent part:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.
>
> ∗∗∗
>
> 3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.
>
> ∗∗∗
>
> d. Omission in, or faulty, inadequate or defective:
>
> ∗∗∗
>
> (2) Materials, workmanship or maintenance.

Insurance Policy, ECF No. 31-2 at 30–32. According to Defendant, CCS's cleaning of the windows is "considered faulty, inadequate or defective maintenance" under the policy. Def.'s Rejection Letter, ECF No. 31-3.

3

On February 5, 2016, Plaintiff filed a complaint in the Circuit Court for Montgomery County alleging breach of contract and seeking a declaratory judgment that Plaintiff's claim is covered by the insurance policy. ECF No. 2. On April 13, 2016, Defendant timely removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1332. ECF No. 1. That same day, Plaintiff filed a motion for summary judgment. ECF No. 6.

On August 1, 2016, Plaintiff filed an amended memorandum in support of its motion for summary judgment. ECF No. 31. It argues that it prevails as a matter of law because the "faulty workmanship" exclusion, which served as the sole basis for Defendant's denial of Plaintiff's claim, is ambiguous and the ambiguity should be resolved in favor of Plaintiff as the insured. Plaintiff's position is that the term "faulty workmanship" does not cover the damage caused by CCS. ECF No. 31 at 2. And even if this Court finds that Defendant has met its burden in proving the faulty workmanship exception applies, the "ensuing loss" exception to the faulty workmanship exclusion applies to Plaintiff's loss, and thus policy covered the loss. Defendant filed a cross-motion for summary judgment on August 15, 2016. ECF No. 34. It argues that the faulty workmanship exclusion justifies its denial of Plaintiff's claim and that the ensuing loss exception does not apply. *Id.*

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing

the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

When a court is called upon to decide cross-motions for summary judgment, it must review each motion separately on its own merits to decide whether either party deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Thus, as with any motion for summary judgment, the court must review the facts and reasonable inferences therefrom in the light most favorable to the party opposing that motion. *Id.* Here, the underlying facts are largely undisputed. The parties' arguments center on the proper interpretation of the insurance policy.

### III.   ANALYSIS

Because the parties executed the insurance policy in Maryland, the parties agree that Maryland law applies to the "faulty workmanship" and "resulting loss" issues addressed in the cross-motions. Def.'s Mot. Summ. J., ECF No. 34 at 8–9. The Court will therefore apply Maryland law.

**A.     Defendant's Cross-Motion for Summary Judgment**

**i.      The Faulty Workmanship Exclusion**

Defendant's principal argument against coverage is that CCS's "faulty workmanship" damaged the windows, and so the policy expressly excludes the claim. Insurance Policy, ECF No. 31-2 at 32. Plaintiff responds that the term "faulty workmanship" is ambiguous because the contract does not specify whether it applies to processes, like cleaning windows, or final products such as the windows themselves, or both. Second, Plaintiff argues that it is unclear whether the term applies where originally the contracted-for work was completed properly (clean, debris-free glass), but thereafter subject to collateral damage (glass scratched during cleaning). Plaintiff urges the court to construe this supposed ambiguity in its favor and find that the exclusion of coverage does not reach this case.

Maryland courts interpret the language of an insurance policy with the same principles and rules of construction used to interpret other contracts. *Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 480 (2015). Like any other contract, an insurance contract is "measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Id.* (quoting *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985)). The words of insurance contracts are given their customary, ordinary, and accepted meaning, as determined by the fictional "reasonably prudent lay person." *Id.* (quoting *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 660 (2004)). When contractual language is plain and unambiguous, Maryland courts enforce the terms of the contract as a matter of law. *Calomiris v. Woods*, 353 Md. 425, 445 (1998); *Pacific Indem. Co.*, 302 Md. at 389.

If the language of the contract is ambiguous, Maryland courts turn to extrinsic evidence to determine the intent of the parties. *Connors*, 442 Md. at 480–81. This is where Maryland courts depart from the rule followed in many other jurisdictions—i.e., that any ambiguity is interpreted in favor of the insured as a matter of course. A policy term is considered "ambiguous

if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Id.* at 481 (quoting *Cole*, 359 Md. at 305–06). If either no extrinsic evidence or parol evidence is introduced, or such evidence does not resolve the ambiguity, only then do Maryland courts construe the policy against the insurer "*as the drafter of the instrument*." *Id.* at 483 (quoting *Megonnell v. United Servs. Auto. Ass'n.*, 368 Md. 633, 655 (emphasis in original)).

Maryland courts often turn to dictionary definitions as a starting point in resolving ambiguous contractual or statutory language. *See Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000); *Bottini v. Dep't of Fin.*, 450 Md. 177, 195 (2016). The term "workmanship" is defined as "something effected, made or produced" or "the art or skill of a workman; *also*: the quality imparted to a thing in the process of making <a vase of exquisite workmanship>." Merriam-Webster's Collegiate Dictionary 1443 (2012). These definitions demonstrate that the term can be used to describe the quality of a finished product (something effected, made or produced) or the process of creating a product but before the product is completed.

Plaintiff views the product and process definitions of "workmanship" as separate and distinct. According to Plaintiff, because the term carries at least two meanings and it is not clear which definition the parties adopted when it execute the insurance contract, the Court should resolve the ambiguity in favor of Plaintiff.

The Court disagrees with Plaintiff's characterization of the term "workmanship." Whether one uses the term "workmanship" to describe the quality of work in progress or the quality of a final product, the term is being used to refer to the quality or skill of the work performed in the process of creating the product. Take, for example, the following sentences:

"The problems were caused by cheap materials and poor workmanship."

"The excellent workmanship of the cabinets is remarkable."

The first sentence clearly describes the process of creating a thing and the problems that resulted. The second sentence, while certainly describing a finished cabinet, uses the term workmanship to refer to the quality of the process of creating the cabinet. Thus, the dictionary distinguishes between two different uses of the term workmanship, but the term itself carries a single meaning.

Although dictionary definitions are helpful in resolving potentially ambiguous contractual language, the Court must still consult the context in which the parties entered into their agreement. *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 167 (2003) ("When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used."); *cf. Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 480 (2015) (a contract must be construed in its entirety). The insurance policy's exclusionary provision states:

> 3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.
>
>    a.   Hidden or latent defect, mechanical breakdown or failure (including rupture or bursting caused by centrifugal force), or any quality in the property that causes it to damage or destroy itself.
>
>    b.   Corrosion, rust or dampness.
>
>    c.   Wear and tear, gradual deterioration.
>
>    d.   Omission in or faulty, inadequate or defective:
>
>    (1) Planning, zoning, development, surveying, siting, design, or specifications; or
>
>    (2) Materials, *workmanship* or maintenance.
>
>    e.   Settling, cracking, shrinking or expanding.

Insurance Policy, ECF No. 31-2 at 32 (emphasis added). The term "workmanship" appears in a list of words that include "planning," "zoning," and "development" and "maintenance," which

are all parts of the building process. The fact that "workmanship" falls between these terms is evidence that the term was intended to refer to another part of the building process. *See Schultz v. Erie Ins. Grp.*, 754 N.E.2d 971, 976–77 (Ind. Ct. App. 2001) (interpreting a similar exclusion and concluding that the word "'workmanship,' falling between planning and maintenance, at the very least signifies a component of the building process leading up to a finished product."). Therefore, in the context of this policy, the definition of "faulty workmanship" at minimum refers to the execution of a process.

Our analysis of the term "workmanship" within the insurance policy's exclusion is in accord with the state and federal courts that have deemed the faulty workmanship exclusion unambiguous. *See, e.g.*, *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 462–63 (5th Cir. 1982); *Bangert Bros. Const. Co. v. Americas Ins. Co.*, 888 F. Supp. 1069, 1073 (D. Colo.), *aff'd*, 66 F.3d 338 (10th Cir. 1995); *L.F. Driscoll Co. v. Am. Prot. Ins. Co.*, 930 F. Supp. 184, 187 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997); *Kroll Const. Co. v. Great Am. Ins. Co.*, 594 F. Supp. 304, 307 (N.D. Ga. 1984); *Schultz v. Erie Ins. Grp.*, 754 N.E.2d 971 (Ind. Ct. App. 2001).[1] Plaintiff's "either/or approach" to the two definitions of "workmanship" "creates a false distinction, failing to take into account that a flawed process will often lead to a flawed product." *Schultz v. Erie Ins. Grp.*, 754 N.E.2d 971, 976 (Ind. Ct. App. 2001). Additionally, to allow an insured to recover for faulty work performed by a subcontractor, whether in the process of creating a product or the product itself, would turn insurance policies into something they are not: performance bonds or guarantees of contractual work. *Bangert Bros. Const. Co.*, 888 F. Supp. at 1073.

---

[1] "[T]hese exclusions unambiguously prevent recovery for any damages caused by defects in the building materials themselves or by defective work by builders during the construction process." 11 Steven Plitt et al., Couch on Insurance § 153: 79 (2016) (emphasis added) (citing cases).

Plaintiff's reliance on *Allstate Ins. Co. v. Smith*, 929 F.2d 447 (9th Cir. 1991) does not alter this analysis. There, the Ninth Circuit Court of Appeals found a similarly-worded faulty workmanship provision to be ambiguous in part because it concluded that the term could mean the flawed quality of a finished product or a flawed process. *Id.* at 449. California law required application of the most favorable construction for the insured. Thus, the *Allstate* court concluded that the exclusion only applied to flawed products, not processes.

*Allstate* is an outlier in its rationale. *See, e.g.*, *Schultz v. Erie Ins. Grp.*, 754 N.E.2d 971, 976 (Ind. Ct. App. 2001); *Fourth St. Place v. Travelers Indem. Co.*, 127 Nev. 957, 967 (2011); *Wider v. Heritage Maint., Inc.*, 14 Misc. 3d 963, 974–75 (N.Y. Sup. Ct. 2007); *City of Oak Harbor v. St. Paul Mercury Ins. Co.*, 139 Wash. App. 68, 74 (2007). Most courts have interpreted "workmanship" as both "'the quality or mode of execution, as of a thing made' (a process) and 'the product or result of labor and skill; work executed' (a product)." *Fourth St. Place*, 127 Nev. at 967 (quoting Webster's New Universal Unabridged Dictionary 2189 (1996)). In this way, "workmanship" covers both a process *and* a product unambiguously. *Id.* at 968 (citing cases).[2]

In *Carney v. Assurance Co. of America*, No. JFM-04-3434, 2005 WL 899843 (D. Md. Apr. 19, 2005), the Court applied this precise rationale. Defendant subcontractor was tasked with painting and treating the wood siding with preservative on the Plaintiffs' deck house. The subcontractor's improper application of the preservative destroyed the wood siding. *Id.* at *1. Defendant insurer claimed the faulty workmanship exclusion applied because the wood was not

---

[2] Notably, courts have relied on *Allstate* where, although errors in workmanship contributed in the causation, the loss or damage resulted fortuitously from events extraneous to the construction process itself. *See, e.g.*, *Century Theaters, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. C-05-3146 JCS, 2006 WL 708667 (N.D. Cal. Mar. 20, 2006) (heavy rain damaged interior of building after contractor failed to install temporary covering to prevent water intrusion); *M.A. Mortenson Co. v. Indem. Ins. Co. of N. Am.*, No. CIV.98-2319/RHK/JMM, 1999 WL 33911358 (D. Minn. Dec. 23, 1999) (heavy rainstorms and severe flooding damaged property before contractor could construct subgrades). Here, the damage to the windows was directly caused by CCS's error in workmanship, not some event extraneous from the glass-cleaning process itself.

treated and protected properly by the contractor. The plaintiffs tried to distinguish "between 'accidentally improperly timed but otherwise proper installation' of the wood and the improper staining of that wood," asserting that because the former caused their damages, the policy exclusion does not apply. *Id.* This Court deemed the plaintiffs' distinction "insignificant":

> Assuming that the installation of the wood was otherwise proper, the "untimeliness" of the installation itself was faulty workmanship. Likewise, the improper staining of the wood equally constituted "faulty workmanship." Therefore, however the subcontractor's mistakes are characterized, the policy exclusion applies.

*Id.* Similarly here, the distinction between the scratched glass and the cleaning process which produced the scratched glass is as insignificant as the distinction parsed in *Carney*.

Plaintiff alternatively argues that the term faulty workmanship is ambiguous regarding "whether it applies to a contractor who, like CCS, does the job it was retained to do (it cleaned the glass) but causes other damage in the course of performing that work." Pl.'s Resp. in Opp. to Def.'s Mot. Summ. J., ECF No. 36 at 2. In other words, Plaintiff is not seeking from Defendant or CCS any costs of re-doing the cleaning work, but recovery due to CCS's scratching of the glass. "The scratching was 'an unusual or unexpected result attending the operation or performance of a usual or necessary act or event,' which resulted in 'fortuitous loss sustained during the construction of the building.'" ECF No. 36 at 7. Covering such "fortuitous loss," Plaintiff posits, "is the purpose of all risks policies." *Id.*

The Court first notes that Plaintiff's characterization of CCS's duties is too narrow. Plaintiff seems to suggest that CCS was only required to clean the windows in the ordinary sense—i.e., remove everyday dust and dirt from the windows using cleaning solution and a cloth. But CCS's task was more involved than just removing dirt and grime. The subcontract between Plaintiff and CCS states that CCS was responsible for "[e]xterior washing of the windows and surrounding frames." CCS-McHugh Subcontract, ECF No. 31-4 at 2. It is undisputed that

11

"exterior washing" in this context included the removing of mortar, concrete, cement, paint, and other construction debris from the exterior glass.[3] Thus, the scratches were a direct result of the task CCS was asked to complete—cleaning the windows—and not just "collateral damage."

Further, describing the process of scratching the glass as "fortuitous loss" does not make the faulty workmanship exclusion ambiguous or save Plaintiff's claim. The Court agrees that an all-risk policy, like the one here, generally insures against all fortuitous losses, defined by the Fourth Circuit as a loss "dependent on chance." *Ins. Co. of N. Am. v. U.S. Gypsum Co.*, 870 F.2d 148, 151 (4th Cir. 1989).[4] However the types of fortuitous losses covered are obviously limited to those not expressly excluded by the insurance policy. *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042 (4th Cir. 1979). Thus, even if the scratches were considered a "fortuitous loss," as Defendant concedes for the purpose of this motion, ECF No. 38, such fortuitous losses are nonetheless excluded if they resulted from faulty workmanship.[5]

Accordingly, the faulty workmanship exclusion is unambiguous and the court may enforce the terms of the policy as a matter of law. Further, the Court concludes that "faulty workmanship" unambiguously applies to processes including commercial glass cleaning.

---

[3] From the deposition of Daniel G. Rosenberg, Plaintiff's 30(b)(6) witness:

> Q.   Was there mortar, concrete, cement, or paint or other construction debris on the exterior glass that needed to be removed by CCS during cleaning?
> A.   Yes.

ECF No. 34-3 at 71. *See also* ECF No. 36-1 at 7.

[4] As this Court has explained, "Maryland's appellate courts have not addressed the fortuity requirement in the context of an all-risks policy, they have construed the term "accident" from the perspective of an unplanned and unintentional loss." *Icarom, PLC v. Howard Cty., Md.*, 981 F. Supp. 379, 389 (D. Md. 1997) (citing *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 652 (1996) (holding that "an 'accident' under a liability insurance policy [occurs] when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.'")).

[5] General liability policies expressly exclude coverage of the insured's faulty workmanship. 9A Couch on Insurance § 129:18 (2016). "The primary purpose of this exclusion is to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business." *Id.* (citing cases).

ii.     **Whether CCS's Conduct Constitutes "Faulty Workmanship"**

Defendant bears the burden of proving that the "faulty workmanship" exclusion applies to the glass cleaning that CSS performed. *See Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008) ("An insurer has the burden of establishing that the policy excludes a particular loss."). Moreover where, as here, the material facts are not in dispute, the moving party on a motion for summary judgment still bears the initial burden of showing that the undisputed facts, when viewed through the prism of applicable legal principles, entitle it to judgment as a matter of law. *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 355–56 (D. Md. 2004) ("If the moving party would bear the burden of proof at trial, it discharges its initial burden by offering evidence that, if undisputed would entitle it to judgment.") (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir. 1999)). After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Id.* (citing *Celotex*, 477 U.S. at 323–25).

Having reviewed Defendant's Statement of Undisputed Facts and Plaintiff's response to that Statement, the Court finds that Defendant has established a factual basis upon which to conclude that CCS's conduct constitutes faulty workmanship. Plaintiff does not challenge Defendant's factual basis and therefore has not produced enough evidence for a reasonable jury to render judgment in its favor.

In support of its position that CCS's cleaning constitutes faulty workmanship, Defendant has introduced the affidavit of Mark K. Schmidt. Schmidt Aff., ECF 34-21. Schmidt is an engineer who specializes in building facades. He focuses on the evaluation of glass, particularly blemished glass surfaces. *Id.* at 2. He is prepared to testify that "the glass cleaning work by CCS was not performed in accordance with the glass manufacturer's recommendations and industry

standards." *Id.* at 9. Because CCS's glass cleaning work did not conform to industry standards, Defendant argues that CCS's performance constitutes faulty workmanship.

Plaintiff responds that the Court cannot rely on Schmidt's opinion because it is offered only to interpret the faulty workmanship term in the contract which is solely a court determination. *Id.* at 3 (citing several cases). The Court agrees that expert testimony typically cannot be offered to support the interpretation of a contract term. *See, e.g.*, *Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987); *Truck Ins. Exch. v. Marks Rentals, Inc.*, 288 Md. 428, 433 (1980). But here, the Court need not decide whether Schmidt's opinions are admissible because Plaintiff concedes that CCS failed to conform to "the Subcontract and all applicable industry standards . . . ." ECF No. 36-1 at 18. Thus, the Court will accept as true that CCS's glass-cleaning process fell below the industry standards.

More particularly, it is undisputed that GANA 01-0300, *Proper Procedures for Cleaning Architectural Glass Products*, published by the Glass Association of North America (GANA), provides the industry standards that CCS should have followed while cleaning the glass. Pl.'s Resp. to Undisputed Facts (stating that CCS was required to abide by "all applicable industry standards, including . . . GANA 01-0300"). CCS was required to perform its work "in accordance with the Subcontract and all applicable industry standards." *Id.* GANA 01-0300 includes the following glass cleaning recommendations or admonitions:

> (1) first clean a small area of glass and evaluate prior to implementing cleaning techniques on a widespread basis, with the understanding that careful communication between involved parties should precede the use of cleaning techniques that could damage the glass surface; (2) using razor blades larger than nominally 1 inch results in a large probability of damaging the glass; (3) razor blades, if necessary to remove construction debris, should only be used on small affected areas; (4) scraping with razor blades should be performed in one direction only with a new blade and not in a back and forth motion, since

      scratches can result when debris is trapped under the blade; and (5) the glass surface should be soaked with clean water and soap solution to loosen dirt and debris, and rinsed to remove excessive dirt and debris.

*See* Schmidt Aff., ECF No. 34-21 at 7–8.

      It is further undisputed that CCS should have used a metal scraper or razor blade about an inch or an inch and half wide to clean the glass. CCS instead used a six-inch wide metal scraper. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 11–12 ("Undisputed that CCS used a 6-inch wide metal scraper to clean the glass."). Neither party is aware whether any mock-up was done. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 10. CCS did not use scrapers in only small affected areas as per the industry standard. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 14 ("Undisputed."). CCS did not scrape the glass in only one direction but instead scraped the glass in many directions in violation of the industry standard. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 13 ("Undisputed that CCS scraped the glass in many different directions."). Lastly, Plaintiff states that CCS "failed to use water and a squeegee on the glass before scraping the glass." *Id.* at 14. As a result, the glass was scratched beyond the expectations of McHugh and the building's owner. Pl.'s Resp. to Undisputed Facts, ECF No. 36-1 at 18 ("McHugh believes CCS had an obligation to provide the Owner with glass that was not scratched.").

      Based on the above undisputed facts, the Court concludes that CCS' "faulty workmanship" damaged the glass. It is also undisputed that CCS failed to follow industry standards in cleaning the windows and scratched the glass as a result. Thus, taking these facts in light most favorable to the non-moving party, the faulty workmanship exclusion applies and Plaintiff is not entitled to coverage.

**iii.**     **Applicability of the "Ensuing Loss" Exception to the Exclusion**

Plaintiff argues that even if CCS's glass cleaning falls within the policy's faulty workmanship exclusion, the damage that resulted is nonetheless covered under the policy's "ensuing loss" clause. *See, e.g.*, ECF No. 31 at 9. The pertinent sections of the policy provide that defendant "will not pay for loss or damage caused by or resulting from any of the following. *But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.*" Insurance Policy, ECF No. 31-2 at 32 (emphasis added). As this Court has stated, an ensuing loss clause like the one italicized above "operates to ensure coverage for damage from a covered cause of loss that results from an excluded cause of loss." *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F. Supp. 2d 530, 538 (D. Md. 2013). Insurance coverage under an ensuing loss clause is well recognized in Maryland case law, *id.*, and the burden is on the insured to demonstrate that the damage in question falls within an exception to the exclusion. *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008) ("[I]f the insurer successfully establishes that the loss is excluded, the burden shifts to the insured to demonstrate that the damage falls within an exception to the exclusion.").

Plaintiff's position is that the scratches CCS made in cleaning the glass are considered a resulting or ensuing loss because CCS did not install the windows —it simply cleaned them and damage resulted. ECF No. 31 at 14. Defendant responds that the ensuing loss exception to the faulty workmanship exclusion only provides for coverage when an excluded peril causes a separate and independent covered peril that damages property wholly separate from the defective property itself. ECF No. 34 at 17–18. In other words, ensuing loss clauses do not cover the initial damage due to faulty workmanship itself, but instead cover any independent damages that ensue because of the faulty workmanship.

Here, the damage—scratched glass—was directly the result of faulty workmanship. Thus, the ensuing loss clause does not apply. In this regard, the Court once again finds *Carney v. Assurance Co. of America* persuasive. *Carney v. Assurance Co. of Am.*, No. CIV. JFM-04-3434, 2005 WL 899843, at *1 (D. Md. Apr. 19, 2005), *aff'd*, 177 F. App'x 282 (4th Cir. 2006). In addition to finding that the "faulty workmanship" exclusion applied to the damages arising from the treatment of the wood siding, the Court found that plaintiff had not proffered sufficient evidence to trigger the ensuing loss provision. Alternatively, the Court reasoned that even if plaintiffs had proffered such evidence, they still could not recover because damage excluded under the faulty workmanship provision cannot be an ensuing loss. *See id.* at *2 n.4.

In contrast, in *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F. Supp. 2d 530 (D. Md. 2013), the plaintiff hired a company to construct a new building at a university. The company hired a subcontractor to install a water supply line to a water cooler on the third floor of the building. *Id.* at 532. The water supply line leaked, resulting in water damage to the finishes in the building as well as other items of work. Plaintiff filed a claim with the defendant insurer for "water damage to 3 floors from fitting coming loose." *Id.* at 532–33. An insurance investigator determined that the resulting damage flowed directly from the faulty installation of a plumbing fitting by the subcontractor. *Id.*

The *Selective Way* Court held that the faulty installation of the pipe fitting fell within the insurance policy's faulty workmanship exclusion. *Id.* at 538. It also held, however, that "the exclusion for faulty installation does not, by the terms of the policy, exclude water damage that resulted from the faulty installation." *Id.* Such damage is covered by the ensuing loss clause. *Id.* Put simply, the excluded cause of loss (faulty pipe installation) resulted in a covered cause of loss (water leaking from damaged pipes). Because the plaintiff was seeking to recover only for

17

the water damage due to the faulty installation of the pipe fitting, the ensuing loss provision applied.

Here as in *Carney*, Plaintiff seeks recovery for the initial damage caused by CCS's faulty workmanship—the scratched glass. Plaintiff does not allege any other damage that ensued from CCS's faulty workmanship such as was averred in *Selective Way*. Thus, Plaintiff cannot obtain recovery under the ensuing loss clause.

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is based on the same issues and undisputed facts which constituted Defendant's grounds for summary judgment. Plaintiff specifically contends that Defendant, as a matter of law, failed to meet its burden that the faulty workmanship exclusion applies, and that uncontroverted evidence warrants coverage for ensuing loss. For the reasons discussed above, Plaintiff's motion is denied because the claim is covered by the faulty workmanship exclusion, and the damage does not fall under the ensuing loss clause of the insurance agreement.

**IV.     CONCLUSION**

The Court finds that the undisputed facts demonstrate the faulty workmanship exclusion applies to Plaintiff's claim and the ensuing loss provision does not reach claimed damage. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. A separate order will follow.

| | |
|---|---|
| 12/20/2016 | /S/ |
| Date | Paula Xinis<br>United States District Judge |